UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAULA BERRY,

                      Plaintiff,

v.                                 3:16-CV-1513
                                 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                        OF COUNSEL:

OLINSKY LAW GROUP               HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 15.).

      Currently before the Court, in this Social Security action filed by Paula Berry

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 13.)  For the reasons set forth below, Plaintiff's motion is granted, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1966.  (T. 159.)  She completed three years of college.  (T. 374.)  Generally, Plaintiff's alleged disability consists of rheumatoid arthritis, bronchitis, glaucoma, back pain, vision problems, diabetes, mental problems, heart problems, anemia, obesity, neuropathy, carpal tunnel syndrome, Erb's palsy, and a history of stroke.  (T. 222.)  Her alleged disability onset date is November 23, 2011.  (T. 161.)  Her date last insured is June 30, 2012.  (T. 159.)  She previously worked as a nursing assistant, grocery store cashier, and sales representative.  (T. 393.)

### B.    Procedural History

On July 15, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 159.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 31, 2015, Plaintiff appeared before the ALJ, Marcus Christ.  (T. 52-76.)  On June 2, 2015, ALJ Christ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 31-51.)  On December 29, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

###    C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 36-44.)  First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2012 and Plaintiff had not engaged in substantial gainful activity since November 23, 2011.  (T. 36.)  Second, the ALJ found that Plaintiff had the severe impairments of depression, anxiety, obesity, and diabetes mellitus.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 37.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work.  (T. 38.)[1]  The ALJ determined Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, could stand, walk, and sit for six hours in an 8 hours workday except she could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs.  (*Id.*)  The ALJ determined Plaintiff could frequently perform handling and fingering and should be allowed to use a handheld assistive device for uneven terrain or prolonged ambulation.  (*Id.*)  The ALJ determined Plaintiff must avoid moving machinery and unprotected heights.  (*Id.*)  The ALJ determined Plaintiff was limited to simple, repetitive, routine tasks, and could have only occasional interaction with the public.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 42-43.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC determination was unsupported by substantial evidence.  (Dkt. No. 12 at 11-14 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence.  (*Id.* at 14-16.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly evaluated the medical evidence of record.  (Dkt. No. 13 at 6-11 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ properly determined Plaintiff could perform work at step five.  (*Id.* at 11-12.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

**A.  Medical Opinion Evidence in the Record**

Plaintiff asserts the ALJ failed to appropriately weigh medical opinion evidence in the record in formulating his RFC determination and therefore the RFC determination was not supported by substantial evidence.  Specifically, Plaintiff contends the ALJ failed to properly assess the opinion of treating source, Jessica Cook, M.D., erred in afforded too much weight to consultative examiner Salmar Choksi, M.D., and the ALJ failed to consider the opinion of Nagy Shanawany, M.D.  (Dkt. No. 12 at 11-14 [Pl.'s Mem. of Law].)

**i.   Dr. Cook**

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  " '[T]he opinion of a claimant's treating

physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

On April 23, 2015, Plaintiff's treating source, Dr. Cook, provided a medical source statement.  (T. 933-937.)  Dr. Cook opined Plaintiff could sit for eight hours in a workday, but could not stand or walk.  (T. 933.)  She opined Plaintiff could occasionally

lift and carry up to ten pounds, but never lift and carry more than ten pounds.  (T. 934.)
Dr. Cook opined Plaintiff could sit for thirty minutes before needing to change position.
(*Id.*)  She opined Plaintiff could use her hands for repetitive activities.  (T. 935.)  Dr.
Cook opined Plaintiff could occasionally bend and could not perform any other postural
activities.  (*Id.*)

        Here, the ALJ erred in affording "little weight" to Dr. Cook's opinion.  (T. 41.)  In
support of his determination the ALJ stated the "assessment [is] unsubstantiated by
[Plaintiff's] longitudinal treatment notes and remaining medical evidence of record."  (T.
42.)  In his assessment of Dr. Cook's opinion, the ALJ failed to cite any contrary medical
opinion or other evidence.  Instead, the ALJ only stated that the doctor's opinion was
inconsistent with treatment notes and other medical evidence.  *See Morgan v. Colvin*,
592 F. App'x 49, 50 (2d Cir. 2015) (ALJ's conclusory, one-sentence explanation, stating
treating source opinion was not supported by the overall medical record, did not fulfill
his obligation to provide good reasons for the weight afforded); *see Rugless v. Comm'r
of Soc. Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013) (ALJ gave only a conclusory
explanation of why treating source's opinion was inconsistent with the record).

        To be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence
contained in the record, so long [as] the evidence of record permits the Court to glean
the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019,
2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d
1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).  Here, the ALJ afforded
the opinion of consultative examiner, Dr. Choksi "considerable weight" and the doctor
essentially concluded Plaintiff could perform light work.  (T. 41, 852.)  Therefore, Dr.

Choksi's opinion could be construed as a contrary medical opinion to Dr. Cook's opinion and substantial evidence to support the ALJ's RFC.  However, the ALJ's analysis of Dr. Choksi's opinion, as his analysis of Dr. Cook's opinion, was conclusory at best.  The ALJ stated Dr. Choksi's opinion was "consistent with the remaining medical evidence of record and with the above residual functional capacity."  (T. 41.)  However, the ALJ cited no medical evidence which he determined was consistent with Dr. Choksi's opinion.

Defendant asserts the ALJ properly discounted Dr. Cook's opinion because it conflicted with treatment notes, Plaintiff's testimony, and the opinion of "other doctors" in the record.  (Dkt. No. 13 at 11 [Def.'s Mem. of Law].)  Although the ALJ summarized various treatment notes, Plaintiff's testimony, and Dr. Choksi's opinion, the ALJ did not cite to any evidence in his analysis of Dr. Cook's opinion or Dr. Choksi's opinion.  Here the ALJ recited the evidence in the record, however, such recitation does not constitute analysis.  Because it is the function of the ALJ to make such findings, and this Court may not substitute its findings to remedy the ALJ's omission, remand is necessary.  *See Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (internal citations omitted); *see also Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.' ") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-

89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5

(N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in

sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*,

728 F.2d 582, 587 (2d Cir. 1984)).

###     ii.     Dr. Shanawany

Under 20 C.F.R. §§ 404.1527 and 416.927, ALJs are required to weigh and

evaluate "every medical opinion."  Medical opinions are "statements from acceptable

medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do

despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2).  Plaintiff received treatment from providers, including Dr.

Shanaway, at the Fakhoury Chiropractic Clinic, in 2012.  Dr. Shanawany, a licensed

medical physician is an acceptable medical source.  *See id.* at 404.1513(a)(1),

416.913(a)(1) (listing licensed medical physicians as acceptable medical sources).  Of

note, it appears from the records, Plaintiff received care from Dr. Shanawany and

chiropractors, Leo Teeter, D.C and "JH."  (T. 686.)[2]  Chiropractors are not acceptable

medical sources under 20 C.F.R. §§ 404.1513(a)(1) and 416.913(a)(1).

In his decision, the ALJ did not discuss or refer to treatment notations provided

by Fakhoury Chiropractic Clinic.  (T. 36-44.)  Dr. Shanawany's notes included Plaintiff's

history, objective examinations, objective medical imagining, assessments, diagnosis,

treatment plans, and treatment notations.  (T. 663-686.)  Dr. Shanawany's notes also

---

[2]     Chiropractic treatment notations were signed "LT" or "JH."  (T. 679-686.)  One
chiropractic treatment notations contains the name, Leo Teeter, D.C.  (T. 686.)

included a section titled "ADLs Affected" and listed various activities of daily living, such as "cleaning house, mopping, vacuuming, cleaning windows, stooping or bending, get dress."  (T. 667.)  Elsewhere treatment notes listed "ADLs Affected" as "bending and stooping down, too much walking, standing too long" and "reaching up, reaching and lifting more than 10 pounds, bending and stooping."  (T. 676, 678.)

Plaintiff asserts Dr. Shanawany's "ADLs Affected" notations constituted medical opinions and therefore the ALJ was obligated to consider them.  (Dkt. No. 12 at 13 [Pl.'s Mem. of Law].)  Defendant argues the ALJ did not err in failing to mention Dr. Shanawany's treatment notations because the doctor did not provide a medical opinion. (Dkt. No. 13 at 10-11 [Def.'s Mem. of Law].)  Defendant asserts Dr. Shanawany "simple recit[ed] Plaintiff's self-reported complaints."  (*Id.*)

Diagnoses, prognoses, and statements about the severity and nature of impairments are considered medical opinions.  *Wider v. Colvin*, 245 F. Supp. 3d 381, 390 (E.D.N.Y. 2017).  In this case, Dr. Shanawany's notations were a recording of Plaintiff's complaints.  There is no indication from Dr. Shanawany's notations that he advised Plaintiff to restrict her daily activities or provided functional limitations. However, although Dr. Shanawany's activities of daily living notations were recitations of Plaintiff's complaints, his treatment notations also contained diagnoses, objective medical evidence and subsequent impressions, and treatment for physical impairments. As stated, the ALJ did not discuss this evidence at any step of his determination.  Of note, at step two the ALJ found Plaintiff's depression, anxiety, obesity and diabetes to be severe impairments.  (T. 36.)  The ALJ also found Plaintiff's hypothyroidism, hypertension, and cataracts to be non-severe.  (*Id.*)  However, the ALJ makes no

mention of the physical impairments assessed by or treated by Dr. Shanawany. Therefore, on remand the ALJ should consider the medical evidence provided by the Fakhoury Chiropractic Clinic.

### B.  The ALJ's Step Five Determination

Due to the errors in weighing the medical opinion evidence in the record, the ALJ will also need to make new findings related to Plaintiff's RFC and what other work Plaintiff retains the ability to perform in the national economy.  If warranted, the ALJ should consult with a vocational expert.

Of note, Plaintiff argues the ALJ's hypothetical to the vocational expert was faulty because it did not include the ALJ's step three finding that Plaintiff had "moderate" difficulties in concentration, persistence or pace.  (Dkt. No. 12 at 14-16 [Pl.'s Mem. of Law].)  However, an ALJ does not commit *per se* error in failing to incorporate a moderate limitation found at step three in his step four RFC determination.  *See Cohen v. Comm'r of Soc. Sec.,* 643 F. App'x 51, 53 (2d Cir. 2016) ("Although the ALJ did find [a moderate] limitation when making its step 3 determination as to whether Cohen had a *per se* impairment, the ALJ was not required to also incorporate it in its step 4 determination as to Cohen's residual functioning capacity."); *see McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014) (noting that step 4 findings "need only 'afford[ ] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [b]e supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]' ").

The ALJ accurately stated at step three that "[t]he limitations identified in the 'paragraph B' criteria are not a[n][RFC] assessment but are used to rate the severity of

mental impairments at steps 2 and 3 of the sequential evaluation process."  (T. 38); *see* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  The ALJ is not required to explicitly include the "paragraph B" limitations in his RFC assessment or hypothetical to the VE. *See id.* ("The mental RFC assessment used at steps 4 and 5 ... requires a more detailed assessment [than that required under the 'paragraph B' criteria at steps 2 and 3].").  The ALJ's hypothetical to the vocational expert mirrored his RFC findings of simple, routine, repetitive work with occasional interaction with the public; the hypothetical further included a limitation to only occasional changes in the work setting. (T. 74.)

The Second Circuit found that an ALJ's hypothetical should have explicitly incorporated the claimant's limitations in concentration, persistence, or pace.  *McIntyre,* 758 F.3d at 152.  Nonetheless, the Court concluded that the ALJ's error was harmless, holding as follows:

> [A]n ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]"

*Id.* at 152 (citing *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011)).  Here, as in *McIntyre*, substantial evidence in the record demonstrated that Plaintiff could engage in simple, repetitive, routine tasks, with only occasional interaction with the public.  (T. 38.)  Any error to specifically include a "moderate" limitation in concentration, persistence and pace in his hypothetical to the vocational expert was harmless.

Therefore, any error the ALJ made at step five in failing to include a limitation to concentration, persistence, or pace was harmless. However, because remand is necessary for a proper evaluation of the medical opinion and other evidence in the record, remand is also necessary for a proper step five determination based on the new evaluation.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:      March 19, 2018

William B. Mitchell Carter
U.S. Magistrate Judge

14